FILED

IN THE UNITED STATES DISTRICT COURT    2019 MAR 21   PM 12: 25
FOR THE MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION                          CLERK, US DISTRICT COURT
                                        MIDDLE DISTRICT OF FL
                                        OCALA FLORIDA

LEE BENTLEY FARKAS,                    )
            Plaintiff,                 )
                                       )   Civil Action No. 5:19-CV-147 OC 37 PRL
        v.                             )
                                       )
UNITED STATES OF AMERICA,              )
            Defendant.                 )
                                       )
_____            )

COMPLAINT TO COMPEL EXECUTION
OF FORFEITURE, RESTITUTION AND MONEY JUDGMENTS

Pro Se Plaintiff, Lee B. Farkas sues the Defendant, the United States
of America to satisfy forfeiture, restitution and money judgments in the
aggregate amount of THREE BILLION FIVE HUNDRED FORTY SIX MILLION TWO HUNDRED
EIGHTY FOUR THOUSAND SIX HUNDRED SEVENTY SIX DOLLARS ($3,546,284,676.00).

For years, Plaintiff, who is incarcerated in federal prison, has
been requesting that the government satisfy the judgments against him by
seizing the assets of Taylor, Bean & Whitaker Mortgage Corp., its successors
and/or assigns ("TBW"), Plaintiff's wholly owned mortgage banking business.
Plaintiff was prosecuted and convicted of bank fraud, wire fraud and
securities fraud.  The indictment clearly charged that he committed the
illegal acts "through" his company, TBW, and that TBW was the recipient of
the total proceeds of the illegal acts for which he was convicted.  The
judge in his criminal case made it clear that every act for which Plaintiff
was convicted was a transaction between TBW and third parties.  And yet,
curiously, the Defendant refuses to seize the assets which are adjudicated

-1-

to be the proceeds of the crime, instead, allowing the criminal proceeds
to remain with the company, its successors and/or assigns and denying
restitution to the victims.

### JURISDICTION

Subject matter jurisdiciton exists in this case because the Defendant is
the United States of America.

Personal jurisdiction exists because Defendant currently resides
at Coleman Federal Correctional Complex, Florida  (28 USC §1391).

Although Plaintiff has attempted to sue Defendant in federal
bankruptcy court and in Plaintiff's criminal case (United States Bankruptcy
Court, Eastern Division of North Carolina, Raleigh Division Case # 18-00835-
5-SWH,  In Re: Lee Bentley Farkas adversary proceeding No. 18-00054-5-SWH,
Lee Bentley Farkas v. United States of America;  United States District
Court for the Eastern District of Virginia, Alexandria Division, 1:10-cr-
00200-LMB  United States of America v Lee Bentley Farkas), neither court
had jurisdiction to  adjudicatethe substantive issues of the litigation.
No court has opined on the legal or factual arguments presented in this
lawsuit.

### PARTIES AND PROCEEDURAL BACKGROUND

Plaintiff, Lee Bentley Farkas was convicted of bank, wire and
securities fraud and the conspiracy to commit same in violation of 18 USC
§§ 2,1343, 1344, 1348 and 1349.  In addition to a 30 year prison sentence,
he was ordered to forfeit a money judgment in the amount of $38,541,209.69
and a restitution judgment in the amount of $3,507,743,557.00 was ordered by
the District Court.

-2-

The District Court issued a memorandum Opinion on October 26, 2011.
Among its findings, "TBW would not have remained in business in absence of the
bank and wire fraud scheme" FARKAS (Dkt no. 355, p. 14) and that "the govern-
ment's interest [in substitute property] vested at the time of the offense."
Id (p.15).  It further states that "Title 21 USC §853(p) provides for the
mandatory forfeiture of sutstitute assets..." Id.  It also ruled that the
declarations by special agent David A. Lehr (Dkt Nos. 279-2;288-2) were
sufficient to satisfy the requirements of 21 USC §853(p) that the govern-
ment's interest in Plaintiff's substitute property vested at the time of the
offenses of which Plaintiff was convicted were committed.  The district
court unambiguously stated that "Because the requiremnts of 21 USC §853(p)
have also been met, the government may forfeit other property as a substitute
for the unavailable proceeds."  Id (p.16).

        Pursuant to the express authorization in the district court's
June 30, 2011 order (Dkt no. 300), the government, on October 6, 2015
requested the district court to order forfeiture of several substitute
assets, citing the district court's "specific finding that the United States
is entitled to forfeit substitute assets to satisfy the money judgment (Dkt no.
300 at 2)."  Id  (Dkt no. 490, p.1).  the district court granted the government's
motion  on November 6, 2015, once again confirming that the "requirements of
21 USC §853(p) have been satisfied..." (Dkt no. 514, p.1).

        On December 21, 2015, Plaintiff requested that the United States
join Plaintiff in a motion, similar to the government's October 6, 2015
motion (Dkt no. 490) in the district court to satisfy Plaintiff's forfeiture
and restitution judgments with Plaintiff's wholly owned company, Taylor, Bean

-3-

& Whitaker Mortgage Corp.'s assets as other assets of Plaintiff. The government
never responded.

On September 20, 2016, Plaintiff filed Motion to Forfeit Direct
Proceeds of Crime or Substitute Assets (Dkt Nos. 543, 544), requesting, in
relevant part that the district court order the "forfeiture of TBW's assets
as substitute property of movant...and that his restitution judgment be satis-
fied withthe assets of Taylor, Bean & Whitaker Mortgage Corp. its successors
and/or assigns" (Dkt no. 544, p.6). The government responded with its
Opposition to Motion to Forfeit Direct Proceeds of Crime of Substitute Assets,
arguing that pursuant to Fed Crim P. 32.2(b)(3) that Plaintiff's right to
challenge his forfeiture was foreclosed upon by the fact that, although he
did challenge his forfeiture on direct appeal, it was rejected; and a "second
problem with defendant's motion is his alternative theory that the TBW assets
owned from 2002 thorough the present should be forfeited as substitute assets.
there is no privision in 21 USC §853(p), the substitute asset provision, to
forfeit assets owned by anyone other than defendant." (Dkt no. 545, p.3).
Although admitting "that the court SHALL order the forfeiture of any other
property of the defendant...TBW assets are not 'any other property of the
defendant' hence the flaw in his theory." (Dkt no. 545, p.3)(emphasis added).

The district court ruled that Plaintiff had waived the argument
that TBW's assets should be forfeited in lieu of his personal property, and
that "forfeiteture authority extends only to defendant's property." (Dkt no.
546, p. 4). The district court explained "And it is a fundamental principle
of corporate law that the corporate owner/employee, a natural person, is

distinct from the corporation itself, a legally different entity with different rights and responsibilities due ot its legal status, <u>Cedric kushner promotions, LTD, v. King</u> (533 US 158, 163 (2001)).  As a result, TBW's assets are distinct from those of the defendant, irrespective of his ownership share, and this Court's forfeiture order authorizing the government to seize defendant's property cannot be satisfied with the assets of TBW." (Dkt no. 546, p.4-5).

Plaintiff moved the district court to reconsider its denial of Plaintiff's motion to forfeit direct proceeds of crime of substitute assets, insisting that Plaintiff owned TBW and that it and its assets were, in fact, other property of Plaintiff, and therefore subject to the district court's order of forfeiture of substitute property.

The government's position started to evolve.  In its Opposition to Motion for Reconsideration Re: Motion to Forfeit Direct Porceeds of Crime or Substitute Assets, it argued that 1)  There is no jurisdiction to consider Defendant's motion, 2)  Defendant has no right to insist on forfeiture of any specific property, and 3)  that TBW's involvement in the matter was resolved through the Settlement Agreement and this Court's implementing order (Dkt no. 553, Pp. 3-4).  But, the government also acknowledged that "It is true that corporate assets are often forfeited where the corporation is shown to be the alter ego of the defendant."  (Dkt no. 553 p.5).  It rejected the forfeiture in the case based on alter ego theory stating:  "Here, TBW was abused by defendant and maintains a separate status.  Thus, the Cour  is not at liberty to ignore the corporate form."  (Dkt no. 553, p.5).  No further briefing was allowed.

The district court denied Plaintiff's motion for reconsideration

finding his position has no merit as demonstrated by the government's opposition brief.  Plaintiff appealed.

After the opening brief was filed, Plaintiff became aware of In Re: Taylor, Bean & Whitaker Mortgage Corp. (No. 3109-bk-7047-2015 WL 728493, at *5 (Bkr. MD Fla, Feb, 2016)) and notified the Fourth Circuit Court of Appeals of the ruling by the federal bankruptcy judge in Florida that Lee Farkas and TBW were alter egos.  Please note that this opinion was issued 20 months before the government's Opposition to Motion for Reconsideration Re: Motion to Forfeit Direct Proceeds of Crime orSubstitute Assets (Dkt no. 553) was filed in the district court.  Also note that the United States Dept. of Justice, Criminal Division, Intervenor, was  party to the litigation.  While the government knew that Farkas and  TBW were alter egos, it nevertheless argued, in the criminal case that they were not (Dkt no. 553, p.5).  The Fourth Circuit elected to ignore the fact that Judge Funk had ruled that Lee Farkas and TBW were alter egos, and confirmed that TBW and Farkas were NOT alter egos.

Plaintiff appealed to the Fourth Circuit to re-hear his motion en banc, which was denied on June 27, 2017.  Because the Fourth Circuit had never considered the ruling by the federal bankruptcy judge that TBW and Lee Faraks were alter egos, In re: Taylor, Bean & whitaker Mortage Corp., and the district court was unaware of the ruling as well, Plaintiff filed a motion under Fed Rules Civ P. 60(b)(2) in the district court in August, 2017.  Plaintiff, seeking a new hearing, offered the ruling by Judge Funk that Lee Bentley Farkas was an alter ego of Taylor, Bean & Whitaker Mortgage Corp.  Plaintiff argued that by taking judicial notice of Judge Funk's ruling, as it must when re-quested, the district court would be free to order the forfeiture of TBW

-6-

and its assets as other assets of Farkas. The government had also argued that the district court would be free to forfeit TBW and its assets if Farkas and TBW were alter egos. (Dkt no. 553, p.5).

The government's position evolved further. In its Opposition to Motion Under Federal Rules ofcivil Procedure 60(b)(2) for Relief from the Court's Order (Dkt no 575), it states that "a finding of alter ego status at the time of the cirme does not equate to alter ego status now." and that the "Fourth Circuit has already considered the bankruptcy court's opinion and nevertheless affirmed this Court's [the district court] prior ruling." (Dkt no. 575, p.2), and quesitoned the jurisdiction of the district court to entertain the 60(b)(2) motion.

Plaintiff rebutted the government's opposition in part highlighting the false statements made to the district court by the government. The district court neither confirmed nor denied that the Fourth Circuit considered Judge Funk's ruling that TBW and Lee Farkas were alter egos, and avoided confirming that the government lied. It denied Farkas' motion, while admitting that the newly discovered evidence was "material to the second of those holdings [that Farkas was not TBW's alter ego]." (Dkt no. 578, p.3). Once again, Farkas requested the district court to reconsider, but it was summarily dismissed.

Plaintiff filed an adversary proceeding in his Chapter 7 bankruptcy, In re: LEE BENTLEY FARKAS, case no. 18-00835-5-SWH, adversary proceeding no. 18-00054-5-SWH, to compel execution of forfeiture, restitution and money judgments against debtor's substitute assets purusant to 21 USC §853(p) on May 24, 2018. The bankruptcy court, citing lack of jurisdiciton, dismissed the complaint at the behest of the Defendant. The substantive pleadings in the case were never argued; as summary judgment was granted against the Plaintiff.

-7-

## ARGUMENT

This case is unique; the situation is novel.  Plaintiff's indictment and the theory of the government's case is that Plaintiff "[C]aused the transfer of funds between TBW accounts in an effort to hide TBW overdrafts...caused TBW to sell to Colonial Bank mortgage loan assets...that did not exist...caused TBW to sell to Colonial Bank...fictitious trades...caused TBW to sell to Colonial Bank...trades backed by value impaired loans...caused TBW to submit materially false information to Ginnie Mae..." (Dkt no 1, Pp. 20-21). All of the charges in Farkas' indictment involved transactions between TBW and others. The Forfeiture Notice included substitute assets pursuant to 21 USC §853(p). (Dkt no. 1, p.28).  Nevertheless, the government never sought, nor did the district court specifically order forfeiture of the direct proceeds of the crimes even though the district court knew where the proceeds went; explaining in October, 2016: "Stated differently, although the direct proceeds of the fraud went to TBW, at issue in the forfeiture order is not the total proceeds of the fraud, but defendant's gross receipts from those proceeds" (Dkt no. 546, p.3).  And yet, based on all of this, the government sought to forfeit only non-TBW assets from Plaintiff.  Even though TBW and its assets represented over 95% of Farkas' net worth, the government carefully avoided forfeiture of these assets, which were ruled to be the actual proceeds of his crime; instead only sought to forfeit innocent substitute assets.

The government's view of Farkas' substitute assets has evolved. Initially, it argued that TBW and its assets were "not any other property of defendant [Farkas]" (Dkt no. 545, p.3).  Later, that if Farkas and TBW were alter egos, the district court should order the seizure of TBW assets (Dkt no. 553, p.5); still alter that it isn't fair to TBW because TBW and Farkas

-8-

are no longer alter egos (Dkt no. 575, p.2), relying on the Bankruptcy Court
Judge's finding that Farkas and TBW were alter egos during the time of the
crimes for which Plaintiff was convicted were committed. The government, however,
as early as July 24, 2013 believed that title to any forfeitable assets held by
Plaintiff vested in the United States at the time his fraud commenced under the
relation back doctrine; citing <u>United States v. McHan</u>, 345 F. 3d 262, 271 (4th
cir, 2003) (Dkt no. 490, p.1).

<u>COUNT ONE</u>

  Plaintiff realleges the allegations set forth in the preceeding
section of this complaint and incorporates them by reference.

  Fourth Circuit precedent requires that the substitute property which
is subject to forfeiture under 853(p) must be read to include all property of
the defendant at the time of the commission of the acts giving rise to the
forfeiture <u>United States v. McHan</u> (345 F.3d 272, 4th Cir, 2003). "Section
853(p) is not discretionary; rather the statute mandates forfeiture of sub-
stitute assets when the property has been placed beyond the reach of forfeiture"
<u>United States v McCrea</u> (584 Fed Appx 157, 158, 4th Cir, 2014). With criminal
forfeiture, the government is always free to pursue substitute assets. 21
USC §853(p). <u>Young v United States</u> (489 F. 3d 313, 316 7th Cir 2007).

  The First Circuit explained that when the original property can
not be located upon exercise of due dilligence or has been transferred or
sold to a third party, then the court shall order the forfeither of any other
property of hte defendant. 21 USC §853(p)(1)(A) and (B). All that is neces-
sary, therefore for a court to issue is that these conditions are met. No ad-
ditional notice is necessary. <u>United States v. Misla-Aldaronodo</u> (478 F 3d 52,
74-75, 1st Cir, 2007). The court further noted that the "government might not
even know that substitution is necessary until it takes possession of the

-9-

property specified in the initial forfeiture order." Id. Lee Farkas could not possibly have been expected to know, at the time of the initial forfeiture order what, if any, other substitute assets would be necessary to satisfy the forfeiture order and the money judgemnt.

Because Judge Funk, in the TBW bankruptcy case ruled that Farkas and TBW were alter egos at the time of the criminal acts for hwich Plaintiff was convicted, removing any doubt as to whether Lee Farkas and TBW were alter egos, the government is automatically required to forfeit TBW assets as substitute assets of Plaintiff. The government, in its Opposition to Motion for Reconsideration Re: Motion to Forfeit Direct Porceeds of Crime or Substitute Assets (Dkt no. 553, p.5) cited United States v. Peters (257 F.R.D. 377 384 W.D.N.Y 2009) (disregarding corporate form and ordering defendant topay money judgment equal to the value of the property obtained by alter ego corporations in a bank fraud case); United States v. Segal  (339 F. Supp 2d 1039, 1050 n.14 ND Ill, 2004) (property held in the name of defendant's corporation may be forfeited if defendant's conduct justifies piercing the corporate veil);  United States v. Taylor (2000 WL 715916, *5, D. Or. June 5, 2000) (individual defendant who is corporate president can agree to criminal forfeiture of property nominally held by the corporation, and such property can be forfeited in the criminal case even though the corporation is not a defendant.); and BCCI Holdings (Luxemborg) S.A. Petition of ICIC Investments (795 F. Supp 477, 479 D.D.C. 1992) (assets of corporation that was alter ego of defendant are subject to forfeiture).  These cases, among other facts, helped the government reach the conclusion that "It is true that corporate assets are often forfeited where corporation is shown to

-10-

be the alter ego of the defendant." (Dkt no. 553, p.5). Plaintiff begs that
not only is the government free to forfeit Plaintiff's substitute assets, TBW
and its assets, but it is required to do so, and already has sufficient authority
from the district court in its preliminary forfeiture order.

       The Fifth Circuit shines a bright light on this issue: "In the typical
corporate veil piercing scenario, the corporate veil is pierced such that individ-
ual shareholders can be liable for corporate acts. Here, the purpose of piercing
the corporate veils of Ho Ho Ho Express, Inc and Houston Fruitland, Inc. would
be to hold the corporations liable for the acts of their individual shareholder,
Ho. Therefore, this case presents a 'reverse corporate veil piercing' situation.
'This slight variation is of no consequence, however because the end result under
both views is the same - two separate entities merge into one for liability
purposes.' If alter ego status is shown, courts reverse pierce the corporate
veil to treat the individual and the corporation as one and the same". Elain
Chao v. OSHA v Erik K. Ho (401 F. 3d 355, 5th Cir, 2005) (citations omitted).
The Fifth Circuit makes it clear that Lee Farkas and his alter ego, TBW, must
be treated as "one and the same" allowing the government to sieze TBW's assets
as his other substitute assets.

       The United States Bankruptcy Court for the Eastern District of New
York, In re: Stewart Adler, finds that "By definition, an alter ego corp-
oration possesses no independent volition. Consequently, since Debtor's Corp-
orations were found to have been such prepetition alter egos, the Debtor always
remained inseparable from those five corporation were thus the actions and
property of the debtor...When he failed to do this and instead concealed the

-11-

corporations' assets, the debtor improperly concealed his own assets..." <u>In re:</u>
<u>Stewart Adler</u> (U.S.B.C.E.D.N.Y. 494, B.R. 43, 53, 2013).

"[C]ourts ahve found the requisite economic harm to an individual
debtor which warrants application of the automatic stay in a bankrupcty case
when the veil of a non-bebtor corporation is pierced based on the alter ego
doctrine, as the individual debtor has thereby been rendered personally liable
for the relevant corporate debts" <u>Adler</u> (494 BR 57-58). "Critically, when a
corporate veil is so pierced, the controlling debtor's liability attaches not as
of the issue date of any formal piercing judgment, rather it had attached at the
moment in time in which the factual elements of the piercing remedy...had mater-
ialized" <u>Id</u>. "[T]he consequence of an alter ego determination is not simply
the imposition of personal liability on a principle for the obligation of a
dominated corporation. Rather, since an alter ego corporation both lacked an
existence separate from the person who controlled it and functioned as less than
a bona fide independent entity during the relevant time period, the acts of the
corporation are actually the acts of the controlling individual." <u>Id</u>  (BR 61).

As shown in <u>Elaine Chao</u>, there is no difference holding shareholders
liable for corporate acts and obligations and holding corporations laible for
the acts of their shareholders. The bankruptcy court in <u>Adler</u> completely sup-
ports requiring the government to seize TBW and its assets as other substitute
assets of Lee Farkas. Judge Funk's ruling that TBW and Lee Farkas are alter
egos  during the time of the commission of the crimes from which the forfeiture
and restitution obligations arose requires the government to immediately seize
the assets of TBW as substitute assets of Lee Farkas.

As developed above, because of the ruling by Judge Funk in the TBW
bankruptcy case that Plaintiff and TBW were alter egos , the issue preclusion
and res judicata effect of his ruling (See: Dkt no. 574); the district court's
initial order of forfeiture included the assets of TBW as other substitute assets
of Plaintiff. Because the relation back prinicpal, coupled with the fact that the
liability attached at the moment in time in which TBW and Lee Farkas became
alter egos, requires the assets to be forfeited;  Plaintiff was not required
to request the assets be forfeited or seized.  In fact, as the government pointed
out, [Farkas] has no right to insist on the forfeiture of any specific property."
(Dkt no. 553, p.3).  When the district court ordered forfeiture of some of
Plaintiff's substitute property, it ordered the forfeiture of all of his substitute
assets , and the title to those assets vested in the United States upon commence-
ment of the fraud for which Lee Faraks was convicted, McHan.  No argument from
Lee Farkas was necessary.  The district court must treat the "individual and the
corporation as one and the same."  Elaine Chao (at 355).

The government's right to order forfeiture of substitute assets in a
criminal case is codified in 21 USC §853(p) and Rule 32.2(e)(1)(A) and (B) and
32.2(e)(2).  The government's right to seize substitute assets in a criminal
forfeiture is analagous to the government's right to collect federal taxes by
levy on delingquent taxpayers' property under §6331 of the Internal Revenue
Code of 1954 (26 USCS §6331) which defines "levy" as distraint and seizure by
any means".  See: Leasing Corp. v United States (429 US 338, 50 L. Ed 2d, 530
97 S. Ct. 619, January 12, 1977).  USC §6331 titled "Levy & Distraught", which
authorized the Secretary to collect delinquent taxes by a levy upon all property
and rights to property, authorizing "seizure by any means" to such property

-13-

authorizes the Secretary to collect delinquent taxes by a levy upon all property
and rights to property, authorizing "seizure by any means" and to sell such
property or rights to property  is analagous to the rights granted to the
government under 21 USC §853(p) and under rule 32.2.  The Supreme Court ruled:
If a corporation is the taxpayer's alter ego the government may properly regard
the corporations assets as the taxpayers subject to lien under §6331 of the
Internal Revenue Code (26 USC §6331), to levy upon assets held in the corp-
oration's name in satisfaction of the taxpayer's income tax liability. Id  The
same is true in the current situation.  Here, the government has the right and
responsibility to seize the assets of Plaintiff's alter ego company, TBW.

### COUNT TWO

Plaintiff realleges the allegations set forth above and incorporates
those allegations by reference.

Plaintiff continues to be prejudiced because the government refuses to
satisfy forfeiture, money judgment and restitution judgment with Debtor's other
substitute assets.  Even though the district court ruled that the direct proceeds
of the criminal acts for which Plaintiff was convicted, went to TBW; even though
the  district court ordered forfeiture of substitute assets, which under Fourth
Circuit precedent means forfeiture of ALL substitute assets; even though the
bankruptcy court in TBW's bankruptcy unambiguously ruled that TBW and Lee
Farkas were alter egos during the time of the commission of the crimes for which
Lee Farkas was convicted; even though the government itself admitted that if TBW
and Lee Farkas were alter egos, it would be free to seize TBW's assets as sub-
stitute assets of Lee Farkas; and even though Plaintiff has provided a mountain

-14-

of case law supporting seizure of TBW's assets as other assets of his; the government has violated the law by refusing to seize the substitute assets.

The United States Supreme Court holds allegations of a pro se complaint to less stringent standards than formal pleadings drafted by lawyers. Haines v Kerner (404 US 519, 30 L. Ed. 2d 652, 92 S. Ct. 594).

WHEREFORE, the Plaintiff respectfully requests the Court to:

1) Enter a judgment compelling the government to seize TBW and its assets to satisfy the forfeiture judgment, and the money judgment outstanding against Plaintiff under the relation back doctrine. SEE: USC §853(p); United States v McHan (345 F. 3d 262, 271 (4th Cir. 2003).

2) Enter an order compelling the government to seize the assets of TBW to satisfy the restitution judgment against Plaintiff under the relation back doctrine. SEE: 21 USC § 853(p); Id.

3) Grant such other and further relief as may be just and proper

Dated: _March 18, 2019_

Lee Bentley Farkas   43560 018
FCC Coleman Low C3
PO Box 1031
Coleman, FL  33521

-15-